IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| TAMARA D. ESKRIDGE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | NO. 3:06-0677 |
| v. | ) | JUDGE HAYNES |
| | ) | |
| NISSAN NORTH AMERICA, INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff, Tamara D. Eskridge, filed this pro se action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., ("ADA") and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann.§ 4-21-401 et seq., against the Defendant Nissan North American, Incorporated ("Nissan"), her former employer, asserting claims for racial discrimination and retaliation. The Defendant filed an answer denying the Plaintiff's allegations and the parties proceeded with discovery.

Before the Court is the Defendant Nissan's motion for summary judgment (Docket Entry No. 25), contending, in sum, that Plaintiff lacks proof to support a judgment on her claims and there are not any material factual disputes to preclude an award of summary judgment.

Plaintiff did not respond to the Defendant's statement of undisputed facts and the Court ordered her to do so and informed Plaintiff that a failure to do so may result in an award of summary judgment to the Defendant. (Docket Entry No. 34). Plaintiff was also informed of the need of affidavits for her proof. Id. Plaintiff filed a response, but did not file any affidavits. In her response (Docket Entry No. 36-2) Plaintiff agreed with the Defendant's statement of undisputed facts about her lack of documentation for her medical leave and the facts on her claim

of racial discrimination. Plaintiff, however, insists that her psychotropic medications impacted her lack of response to the Defendant's requests for documentation for her medical leave. Id. at p. 2. Plaintiff insists that in her ten-year tenure with the Defendant, she did not have attendance issues until the episodes at issue. Plaintiff states that she signed a release for her medical records, but was unaware that the Defendant did not get them nor did the Defendant so advise her. Plaintiff reports that the Defendant's notice of her termination caused her to be hospitalized.

## A. Findings of Fact[1]

On November 14, 1994, Nissan hired Plaintiff to work at its Smyrna, Tennessee plant as a production technician, a position she held until 2000. Upon her hiring, Nissan provided her with a copy of the Nissan employee handbook detailing its policies and procedures that include its policies on equal opportunity and illegal discrimination. Plaintiff signed a form acknowledging that she read and understood Nissan's policies and procedures and that her employment was at will. (Plaintiff Deposition at pp. 23-25, Exhibits 1 and 2 thereto) The termination of employment policy reads, in pertinent part:

> Nissan will administratively terminate employees for reasons such as expiration of a leave of absence, an unapproved or unreported absence for three consecutive working days, and failure to return to work at the end of an approved leave of absence. Administrative terminations may not be appealed through peer

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 276 (1986). The Court concludes that based upon Plaintiff's lack of proof and her statements about the Defendant's proof, the Court concludes there are not any material factual disputes. This section constitutes findings of fact under Fed. R. Civ. P. 56(d).

Case 3:06-cv-00677 Document 38 Filed 02/19/08 Page 2 of 16 PageID #: 310

or management review.

Plaintiff Deposition at p. 25; Plaintiff Deposition, Exhibit 2. Plaintiff admits that she understood this policy. Plaintiff Deposition at p. 27.

Nissan's leave policy provides, in relevant part:

> For a nonwork-related disability leave, you must submit a written certification of disability and expected length of leave from a health care provider within 14 days of your first day out of work. While you're on a nonwork-related disability leave, you must submit documentation regarding the status of your medical condition at least every 30 days or on a more frequent basis if required by the company.

Plaintiff Deposition at p. 28; Plaintiff Deposition, Exhibit 2.

In 2000, Plaintiff transferred to the Maxima trim and chassis department, where she worked until her termination on October 6, 2004. From July 20, 2004 to August 5, 2004, Plaintiff was on personal medical leave when Dr. U.P. Patel, her personal physician, cleared her to return to work. On Tuesday, August 24, 2004, Plaintiff sought treatment for anxiety and depression at the Whole Health Medical Clinic's on-site facility at Smyrna, but was told to make an appointment with her personal physician. On August 25th, Plaintiff did not report for work and did not inform Nissan of her absence. Plaintiff also did not report on August 26th, but states that she talked with Tony Bradley, her human resource representative, and Carolyn McCowan, her area manager. Plaintiff was told to report to the Whole Health Medical Clinic the next morning.

On August 27th, Plaintiff reported to Dr. Karen Oldham, a staff physician at the Whole Health Medical Clinic. Plaintiff told Dr. Oldham that her personal physician kept her from work until Monday, September 13, 2004. Dr. Oldham requested medical documentation from

3

Plaintiff's personal physician to justify that leave. Plaintiff signed a medical records release authorization form for Dr. Oldham to access her personal medical records. Plaintiff was sent home pending receipt and review of her medical records. Dr. Oldham faxed Plaintiff's release authorization form and request to Dr. Patel that day, but Dr. Patel did not respond. On September 2nd, Dr. Oldham again faxed to Dr. Patel, Plaintiff's release authorization and requested her medical record, but Dr. Patel did not respond. On September 15, 2004, for the third time, Dr. Oldham requested Dr. Patel to provide Plaintiff's medical records, but Dr. Patel still did not respond.

On September 1, 2004, Plaintiff submitted a letter from "Restore Ministries," a YMCA affiliated service, that Plaintiff was going to Restore Ministries for counseling for her anxiety and depression, and that she had enrolled in a 14-week study program that met once per week.

On September 7, 2004, Bill Slage, Defendant's human resources manager, sent Plaintiff a certified letter: (1) that the letter from "Restore Ministries" did not qualify as medical documentation for her work absences for August 25, 2004; (2) that Plaintiff must provide a healthcare provider's letter to justify her absences by September 21, 2004; (3) that, if she did not do so, her absences would be deemed unexcused; and (4) that her consecutive, unexcused absences were grounds for termination. Plaintiff admits that she received, read and understood this letter. Plaintiff, however, failed to submit the requested documentation to Nissan by September 21st.

Given Nissan's agent's unsuccessful attempts to obtain medical documentation of Plaintiff's health need, the Defendant terminated Plaintiff on October 6, 2004, for three consecutive, unapproved absences.

4

By October 8, 2004, when Plaintiff received her termination notice, Plaintiff had provided Nissan with the requested medical documentation. On March 8, 2005, Plaintiff sent Slagle a facsimile transmission that was a hand-written note on Dr. Patel's clinic letterhead, dated December 20, 2004, that noted "Plaintiff has been under our care for treatment of depression (starting in August 2004)." This letter was Plaintiff's first and only medical documentation purportedly from Dr. Patel.

As to her disability claim, Plaintiff testified only that, "I just believe that because I was not going to be able to perform my job duties, that I was, you know, terminated from my job."

During her employment, Plaintiff's supervisors counseled her for playing her radio too loud in her work area. Plaintiff's supervisors include Bobby Scoggins (White), Rick Martin (Black), Van Smith (White), and Carolyn McGowan (Black). Aside from the radio issue, Plaintiff received satisfactory performance reviews as a Production Technician.

Plaintiff's assertions of racial discrimination focus on Van Smith, Plaintiff's former supervisor whom Plaintiff asserts, often told her to turn her radio down. Smith did not mention that he did not like the music Plaintiff was playing. Yet, at some point, Smith requested Plaintiff not to play gospel music, but Plaintiff responded that she was subjected to other employees' music. The last "radio incident" between Plaintiff and Smith occurred in 2001.

Plaintiff also cites a broadcast that she read in which Smith commented, "Don't you know your numbers? . . . Don't you know your colors?" (Plaintiff Deposition at p. 38). Plaintiff deems these comments to be racially motivated. When Plaintiff asked Smith if the comment were racially motivated, his response was no. Smith never called Plaintiff any derogatory names or made any racial comments. This incident occurred in 1999. Plaintiff did not report either of

5

the Smith incidents to anyone at Nissan.

Plaintiff also cites racial discrimination by a co-worker named "Brad," who made a "racial remark" and was "sabotaging [her] job." Plaintiff Deposition at p. 52. According to Plaintiff, on March or April 2004, Brad told Plaintiff that Black music "sucks." Id. at p. 53. Plaintiff reported this incident to McGowan, her supervisor, and McGowan replied that she would speak with Brad. Plaintiff Deposition at p. 53.

On two occasions, Plaintiff insists that Brad tampered with her work and Plaintiff complained to her line leader, who reported the complaint to McGowan. McGowan responded that she would handle the situation and Brad's behavior stopped shortly thereafter. These incidents occurred in April or May 2004.

### B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment `shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.

<u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support

7

its motion with affidavits or other similar materials negating the opponent's claim. Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission

8

to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is `genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation

9

omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, only the Defendant has given references to the proof upon which the Defendant relies.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

10

3.  The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.  A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6.  As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.  The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to

11

establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### 1. Plaintiff's Racial Discrimination Claims

Title VII of the Civil Rights Act of 1964, states, in relevant part, that it shall be an unlawful employment practice for an employer

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ....

42 U.S.C. § 2000e-2(a)(1).

In a disparate treatment case of race discrimination, a plaintiff must prove that the adverse employment decision would not have been made, but for her race. Simon v. City of Youngstown, 73 F.3d 68, 70 (6th Cir. 1995). Plaintiff may prove discrimination by direct evidence or indirect evidence. In a direct evidence case, the plaintiff must offer credible evidence of discriminatory animus. See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 379 (6th Cir. 1993). "With direct evidence, the existence of unlawful discrimination is patent." Bartlik v. DOL, 73 F.3d 100, 103 n.5 (6th Cir. 1996). Examples of direct evidence in different discrimination cases include, for example, repeated negative statements made by a decision maker regarding the age of older workers; racial slurs by a manager; and statements to an applicant that a county would not hire a female emergency medical technician. See Kresnak v. City of Muskegon Heights, 956 F. Supp. 1327, 1335 (W.D. Mich. 1997) (citing cases). If the plaintiff presents credible, direct evidence, "the burden of persuasion shifts to the employer to

12

prove that it would have terminated the plaintiff even had it not been motivated by age discrimination." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1081 (6th Cir. 1994) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 244-45, 109 S. Ct. 1775, 104 L. Ed.2d 268 (1989)).

In the absence of direct evidence of discrimination,[2] Title VII disparate treatment claims are subject to a three-part, burden-shifting analysis: (1) the plaintiff must establish a prima facie case of discrimination; (2) the employer must articulate some legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The burden of persuasion, however, remains with the plaintiff at all times. Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir. 1990).

A plaintiff may establish a prima facie case of disparate treatment under Title VII by satisfying the following four elements:

1. She is member of a protected class;
2. She suffered an adverse employment action;
3. She was qualified for the position; and
4. She was treated differently than similarly-situated employees outside of the protected class for the same or similar conduct.

Abeita v. Transamerica Mailings, Inc., 159 F.3d 246, 252 (6th Cir. 1998). See also McDonnell Douglas Corp. v. Green, 411 U.S. at 802. For discriminatory discharge claims, a plaintiff's prima face case must show that her discharge was "without valid cause, and that the employer

---

[2] It should be noted that the McDonnell Douglas formulation for establishing a prima facie case of discrimination is inapplicable to direct evidence cases. As one court stated, "[d]irect evidence and the McDonnell Douglas formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." Blalock v. Metal Trades, Inc., 775 F.2d 703, 707 (6th Cir. 1985).

13

continued to solicit applications for the vacant position." Potter v. Goodwill Indus., 518 F.2d 864, 865 (6th Cir. 1975).

Here, the Defendant had a valid cause to terminate Plaintiff, i.e., her undocumented leave. Plaintiff has not shown that Nissan treated her differently because of her race. The Court concludes that Plaintiff has not established a prima facie showing of racial discrimination. Thus Plaintiff's Title VII claim should be dismissed.

### 2. Plaintiff's ADA Claim

The ADA was enacted to counterbalance society's historic tendency to isolate and segregate individuals with disabilities. 42 U.S.C. § 12101. The ADA serves as a mechanism to level the playing field so that individuals living with disabilities are treated fairly and afforded equal opportunity within the workplace, among other areas. Id. Thus, the ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

To recover on a claim of discrimination under the ADA, a plaintiff must show that: (1) she is an individual with a disability; (2) she is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) she suffered an adverse employment action solely because of her disability. Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996) (citing Maddox v. Univ. of Tenn., 62 F.3d 843, 846 (6th Cir. 1995)).

An individual is disabled under the ADA if: (1) she has a physical or mental impairment that substantially limits one or more of her major life activities; (2) she has a record of such

14

impairment; or (3) she is regarded as having such an impairment. 42 U.S.C. § 12102(2). In Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002) the Supreme Court directed that for purposes of qualification under the ADA's definition of disabled, the terms "substantially" and "major" must be "interpreted strictly."

Under the ADA, the disability issue must be determined on a case-by-case basis. See Albertson's, Inc. v. Kirkingburg, 524 U.S. 555, 567 (1999) (for an ADA claim, the ADA plaintiff must "prove a disability by offering evidence that the extent of the limitation in terms of their own experience... is substantial"). The Supreme Court held that "a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limi[t]' a major life activity." Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999).

"When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." Sutton, 527 U.S. at 491. In the context of work:

> The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

Here, by seeking to return to work, Plaintiff's condition does not substantially limit her ability to work. Thus, Plaintiff's proof does not establish a disability for her ADA claim.

There is not any evidence that Nissan regarded Plaintiff as disabled, but rather found her non-compliance with work rules on approved leave to warrant her termination. Thus, Plaintiff's

15

ADA claim fails.

State courts apply the Title VII and ADA standards as appropriate to claims under the THRA, absent a conflict in provisions. Booker v. The Boemy Co., 188 S.W.3d 639, 647 (Tenn. 2006); Tenn. Code Ann. 4-21-101(a)(1). There is not any conflict here. Thus, Plaintiff's claim fails.

For these reasons, the Defendant's motion should be granted and this action should be dismissed with prejudice. An appropriate order is filed herewith.

**ENTERED** the 15th day of February, 2008.

WILLIAM J. HAYNES, JR.
United States District Judge